Robert Dewayne Martin and Tessa Martin appeal from a judgment setting aside a deed. We affirm in part, reverse in part, and remand.
 Background
As of March 2005, Myrna Martin and her husband, Elgin, lived in a house located on five acres in Springville. Myrna and Elgin maintained horses on the property; a pond was also located on the property. In the past, Myrna had been diagnosed with multiple sclerosis.
On March 14, 2005, Elgin was killed in a tractor accident on the Springville property. Based on the right-of-survivorship clause contained in the deed to their property, Myrna became the sole owner of the property.
Shortly after Elgin's death, Myrna was hospitalized due to complications from her multiple sclerosis. Upon her discharge from the hospital, Myrna stayed with a friend because she was unable to care for herself or for her property.
Elgin's son, Robert, and Robert's wife, Tessa, lived in Pennsylvania. Robert and Tessa had been close to Elgin and Myrna; they had often visited with Elgin and Myrna at the Springville property and they had come to Alabama for Elgin's funeral. In July 2005, Robert, Tessa, and then-three children moved from Pennsylvania to Springville and moved in with Myrna. In order to do so, Robert quit his job in Pennsylvania and Robert and Tessa sold their home there. On August 9, 2005, *Page 1083 
Myrna executed a quitclaim deed conveying the Springville property to Robert and Tessa, reserving a life estate for herself in the property. The consideration for the conveyance as recited in the deed was "$10.00 and for good and other valuable consideration." The deed did not contain a provision stating that Robert and Tessa were to provide support for Myrna during her lifetime.
In October 2005, Robert and Tessa used $25,911.26 of their personal funds to make improvements to Myrna's house. They added a bedroom, a bathroom, and a deck to the house. Robert tended to the land and the horses. By 2006, however, problems had developed. As of the end of May 2006, Robert, Tessa, and their children had returned to Pennsylvania.
On May 26, 2006, Myrna sued Robert and Tessa in the St. Clair Circuit Court. In her complaint, Myrna sought to void the quitclaim deed she had executed in August 2005 to Robert and Tessa. As grounds, she asserted that, in exchange for the conveyance of the property to them, Robert and Tessa had agreed to live on the property and care for Myrna. Myrna alleged that Robert and Tessa had breached their contract by moving off the property and by refusing to care for her after the deed was executed. Myrna also alleged that Robert and Tessa had committed fraud, and had exerted undue influence over her, and that the deed should be voided for lack of consideration.
Myrna's claims were heard ore tenus at a bench trial on January 25, 2007. Robert and Tessa argued that, on the day of the trial, Myrna notified them that she was proceeding under § 8-9-12, Ala. Code 1975. Robert and Tessa objected, arguing that they had not received proper notice of Myrna's claim under that Code section.
On March 28, 2007, the trial court entered a judgment setting aside the quitclaim deed for lack of consideration. Although Robert and Tessa had sought to recover from Myrna the value of payments they had made for permanent improvements, mortgage debt, property taxes, homeowner's insurance, termite treatments, and utility bills while living on the property, the trial court ordered Myrna to pay Robert and Tessa, within 60 days, $25,911.26, representing only the value of the permanent improvements they had made to Myrna's residence. Robert and Tessa filed a motion to alter, amend, or vacate the judgment. The trial court denied that motion by notation on the case-action summary on June 2, 2007; however, that order was not entered on the State Judicial Information System. See
Rule 58(c), Ala. R. Civ. P. Therefore, that motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. Robert and Tessa appealed on July 31, 2007.
 Analysis
We note that this case was tried without a jury. It is well established that, when evidence is presented ore tenus, the trial court's findings on issues of fact are presumed correct and will not be disturbed unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Herston v. Austin,603 So.2d 976 (Ala. 1992).
Robert and Tessa raise a number of issues on appeal. They contend (1) that the trial court erred in granting relief under § 8-9-12, Ala. Code 1975, when relief under that Code section had not been sought or requested; (2) that the trial court erred when it set aside the deed for lack of consideration because a deed under Alabama law is valid without consideration; (3) that the trial court erred in setting aside the deed for lack of consideration because the evidence established that valuable consideration had, in fact, been given *Page 1084 
for the conveyance; (4) that Myrna failed to present substantial evidence indicating that the conveyance was made in exchange for a promise to support Myrna during her lifetime; and (5) that, if the trial court properly set aside the deed, the trial court failed to fully restore Robert and Tessa to their preconveyance position.
We first address Robert and Tessa's argument that Myrna failed to provide adequate notice to them before the trial date that she was seeking relief under § 8-9-12. Under Rule 8, Ala. R. Civ. P., a complaint is sufficient if it puts the defendant on notice of the claims asserted against him or her. Bethel v.Thorn, 757 So.2d 1154, 1158 (Ala. 1999). In her complaint, Myrna alleged that "plaintiff seeks to have this deed set aside due to lack of consideration . . . based on representatives [sic] by the defendants that they were to remain on the property and serve as care-givers for the plaintiff." We conclude that, based on those allegations, Robert and Tessa received adequate notice of the claims asserted against them, pursuant to Rule 8.
We next address issues two through four together. Section 8-9-12
provides:
 "Any conveyance of realty wherein a material part of the consideration is the agreement of the grantee to support the grantor during life is void at the option of the grantor, except as to bona fide purchasers for value, lienees, and mortgagees without notice, if, during the life of the grantor, he takes proceedings to annul such conveyance."
The deed in this case did not recite that Robert and Tessa were to provide support and care for Myrna in consideration of the conveyance. However, parol evidence is admissible to show that the actual consideration for the execution of the deed was the promise on the part of the grantee to support and care for the grantor during his or her life. See, e.g., Kirkpatrick v.Jones, 585 So.2d 828, 830 (Ala. 1991). Therefore, the trial court properly allowed the parties to address at trial their understanding of Myrna's purpose and motivation in conveying the property to Robert and Tessa.
In Ex parte Alexander, 806 So.2d 1222 (Ala. 2001), the Alabama Supreme Court addressed § 8-9-12 and its application. The supreme court stated:
 "`In enacting that law[, Title 20, § 15 of the 1940 Code, the predecessor to 8-9-12, Ala. Code 1975,] the legislature was taking care of the grantor in a deed where a material part of the consideration was a promise to support him for life and under its terms it is immaterial whether that promise has been kept or not. There were two results, we think, which were fixed by that statute. One was that the grantor was given the privilege or option at any time during his life to have the deed vacated by taking proceedings in court, although there was no intent to defraud and although the grantee may have been performing his duty under his obligation to support. The other result fixed by the enactment was to confine that right to the grantor and limit it to his lifetime. That limitation is not confined by the statute to a situation where the grantee is complying with his covenant and entered into it without fraud, but the statute extended the limitation to a situation where the grantee entered into the obligation with the intent of defrauding the grantor and the grantee has refused to comply with his obligation, and also extended the limitation to all rights existing in that connection before it was enacted. The statute is all embracive, so that in any such situation *Page 1085 the grantor has the privilege of instituting proceedings in court during his lifetime to annul the conveyance and that right is limited to him by the statute. . . .
 "`. . . .'
 "McAdory [v. Jones], 260 Ala. [547,] 550, 71 So.2d [526,] 529 [(1954)] (emphasis added). Thus, we have held that, in proceedings to annul a deed under § 8-9-12, Ala. Code 1975, it is immaterial whether the promise to support was actually fulfilled by the grantee. See, e.g., Vaughn v. Carter, 488 So.2d 1348 (Ala. 1986); McAdory, supra.
Rather, the right to annul a conveyance under § 8-9-12, Ala. Code 1975, is completely irrespective of whether the grantee has performed his or her part of the agreement. Herston v. Austin, 603 So.2d 976 (Ala. 1992).
 "To protect such grantors, the Legislature, in adopting § 8-9-12, relieved such grantors of any requirement to prove failure of such consideration in order to annul such conveyances. See Vaughn, McAdory, and Herston, supra."
806 So.2d at 1225.
Thus, a grantor who conveys his or her property in exchange for the grantee's promise that he or she will support the grantor for life may annul the conveyance simply by filing a court action. Proof that the grantee failed to honor his or her agreement is not required.
In this action, the trial court heard disputed evidence as to Myrna's motivation and purpose in conveying the property to Robert and Tessa. The trial court heard evidence that, if believed, established that Myrna conveyed her property to Robert and Tessa in exchange for their agreement to care for Myrna for the remainder of her life so that she would not have to go to a nursing home. The trial court obviously accepted Myrna's version of the evidence. Because, based on the evidence, the trial court's judgment was not clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence, we must defer to the trial court's resolution of the disputed evidence. Therefore, under § 8-9-12 the trial court properly set aside the deed. We affirm that aspect of the trial court's judgment.
We next address Robert and Tessa's argument that, if the deed was properly set aside, then the trial court failed to restore them to their preconveyance position. On appeal, they point out that the evidence established damages exceeding the amount of damages the trial court awarded to them. They argue that the evidence established that Robert quit his job of nine years to move to Alabama and that, once in Alabama, he could not obtain equivalent employment. Robert and Tessa also point out that, upon their return to Pennsylvania, they no longer had a home in which to live.
"The plaintiff has the burden of producing sufficient evidence of his loss to allow the fact-finder to calculate the damages without operating from guesswork." Aldridge v. Dolbeer,567 So.2d 1267, 1270 (Ala. 1990). Assuming, without deciding, that such items would be recoverable in an action under § 8-9-12, we conclude that Robert and Tessa failed to produce quantifiable evidence relating to their move from Pennsylvania, Robert's job loss, and the sale of their home. Therefore, the trial court did not err in failing to award Robert and Tessa damages related to those items.
As to Robert and Tessa's claim for reimbursement of their other payments — mortgage payments, property taxes, homeowner's insurance, termite-treatment expenses, and certain utility expenses — we note that Robert and Tessa produced evidence indicating that those payments *Page 1086 
were, in fact, made by them. Robert and Tessa also produced evidence as to the amount of those payments. Thus, we reject Myrna's argument that the trial court had no evidence before it of any payments made by Robert and Tessa other than their expenditures for the permanent improvements. We also note that there was no uncertainty as to the amount of those damages to prevent the award of those damages.
We also reject Myrna's argument that none of those payments inured to her benefit. Although we agree that the trial court could have concluded that payment of the utility bills (the power, water, and cellular-telephone bills) were for the benefit of Robert, Tessa, and their children and, therefore, were not recoverable from Myrna, we conclude that Robert and Tessa's payments related to the permanent improvements, the mortgage, the property taxes, the homeowner's insurance, and the termite treatment all inured to the benefit of the property and, therefore, to the property owner. Because the conveyance of the Springville property to Robert and Tessa was set aside, the payments related to the permanent improvements, the mortgage, the property taxes, the homeowner's insurance, and the termite treatment all inured to the benefit of Myrna. Under the facts of this case, we conclude that Robert and Tessa are entitled to recover from Myrna the amount paid by Robert and Tessa for those benefits. We, therefore, reverse the trial court's judgment to the extent it ordered Myrna to reimburse Robert and Tessa in the amount of only $25,911.26, and we remand this cause to the trial court for recalculation of the amount to be awarded to Robert and Tessa in accordance with this opinion.
 Conclusion
We affirm the trial court's judgment to the extent it set aside the conveyance, pursuant to § 8-9-12, Ala. Code 1975. We reverse the trial court's judgment to the extent it awarded Robert and Tessa damages in the amount of only $25,911.26, and we remand the cause to the trial court with directions to recalculate the amount of damages to be awarded to Robert and Tessa.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.