Rel: March 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0455

————————————————

### Holly Wren Wallace Schumpert

### v.

### Alton Hugh Wallace, as the personal representative of the Estate of Alton Hamric Wallace, deceased; and Patsy Lockett Wallace, individually and as trustee of the Patsy Gayle Lockett Wallace and Alton Hamric Wallace Revocable Trust

### Appeal from Baldwin Circuit Court
### (CV-23-900543)

COOK, Justice.

In 2020, after Alton Hamric Wallace and Patsy Lockett Wallace suffered serious complications from COVID-19, they asked their daughter, Holly Wren Wallace Schumpert, to relocate from Memphis, Tennessee, to Orange Beach, Alabama, to care for them. In exchange for Holly's willingness to uproot her life and move to Orange Beach, Alton and Patsy promised to convey to her an ownership interest in their Orange Beach condominium.

Holly moved to Orange Beach and undertook efforts to assist in the rehabilitation of her parents. On October 1, 2020, Alton and Patsy, in their individual capacities, executed a deed purporting to convey to Holly an interest in the Orange Beach condominium.

Several years later, Holly returned to Tennessee. Thereafter, Alton and Patsy commenced this action in the Baldwin Circuit Court, seeking to annul the October 2020 deed. They alleged, among other things, (1) that the deed was ineffective because title to the condominium was held by the Patsy Gayle Lockett Wallace and Alton Hamric Wallace Revocable Trust and Alton and Patsy had signed the deed only in their individual capacities rather than as trustees and (2) that the conveyance was voidable and could be annulled under § 8-9-12, Ala. Code 1975, because

a material part of the consideration for the deed was Holly's agreement to provide them with care and support.

In response, Holly sought reformation of the deed to reflect that Alton and Patsy had executed it in their capacities as trustees and asserted counterclaims alleging fraud and breach of the warranties contained in the deed. The trial court granted Alton and Patsy's request to annul the conveyance and dismissed Holly's counterclaims. Holly now appeals to our Court.

This appeal presents two related issues: first, whether Alton and Patsy were entitled, under § 8-9-12, to annul the deed; and second, whether, once the deed was annulled on that basis, the trial court properly dismissed Holly's fraud and breach-of-warranty counterclaims predicated on the same conveyance. As explained below, because we conclude that the statute authorized annulment of the deed and that the annulment extinguished the counterclaims flowing from the deed, we affirm the trial court's judgment.

<u>Facts and Procedural History</u>

Alton and Patsy purchased a residential condominium at Perdido Place in Orange Beach in 2004. Although they initially took title as

3

individuals, they conveyed the condominium to the Patsy Gayle Lockett Wallace and Alton Hamric Wallace Revocable Trust ("the Trust"), of which they were the trustees, by a deed dated May 21, 2004. From that date forward, title to the condominium remained vested in the Trust, with Alton and Patsy serving as its trustees.

In July 2020, Alton and Patsy contracted COVID-19. At that time, their daughter, Holly, resided in Memphis, Tennessee, where she practiced bankruptcy law. Their son, Alton Hugh Wallace ("Alton Jr."), resided with them in the condominium but moved out after they became ill because he feared exposure to the virus.

After learning about her parents' illness, Holly traveled to Orange Beach. When she arrived, she found her father in declining health at the condominium; her mother had already been admitted to a hospital. Holly arranged for her father's admission to the same hospital and remained in Orange Beach to provide care and assistance to both of her parents. After an approximately 10-day hospitalization, both Alton and Patsy were discharged home, where Holly continued to care for them during their recovery.

As August drew to a close, Holly informed her parents that she would need to return to Memphis. In response, Alton and Patsy pleaded with her to stay, expressing fear that they could not care for themselves and that they would be left without reliable assistance if she departed. They told Holly that they did not trust their other children to provide adequate care and emphasized that she was the only person they believed would look after them properly. Holly explained that relocating to Orange Beach would require her to close her law practice and jeopardize her financial security.

Faced with that concern, Alton and Patsy proposed transferring an interest in the condominium to Holly in exchange for her relocation and assistance. Holly accepted the proposal. She subsequently closed her law practice, sold her home in Memphis, and moved to Orange Beach to care for her parents. Alton and Patsy contacted a local attorney to prepare documents to convey an interest in the condominium to Holly. On October 1, 2020, Alton and Patsy, acting in their individual capacities, executed a "Warranty Deed with Right of Survivorship" purporting to convey the condominium to Alton, Patsy, and Holly as joint tenants with rights of survivorship. The deed made no reference to the Trust. The deed also

included general warranties of title. Holly testified that, at the time, she was unaware of the existence of the Trust or that the Trust held title to the condominium.

After the execution of the deed, Holly lived in Orange Beach and assisted her parents. By early 2022, Alton and Patsy had regained independence. In July 2022, after learning that Alton Jr. -- with whom she had a strained relationship -- planned to move back into the condominium, Holly returned to Tennessee. When she left Orange Beach, she took with her a packet of her parents' documents, including their wills and the October 2020 deed.

A few months later, Alton asked Holly to return the wills. Holly returned the entire packet of documents, including the deed. After reviewing the documents and consulting counsel, Alton and Patsy sought to rescind the October 2020 deed. Alton testified that he did not recall executing the deed and was unaware of its existence until the documents were returned. Alton and Patsy asked Holly to execute a corrective instrument, but she declined.

On May 12, 2023, Alton and Patsy commenced this action seeking to annul the October 2020 deed. Alton and Patsy argued that, because

6

the condominium was owned by the Trust at the time the deed was executed, the October 2020 deed signed by them in their individual -- rather than representative -- capacities was ineffective to convey any interest in the Trust's property. They further argued that the deed should be annulled pursuant to § 8-9-12 which permits a grantor to annul a deed when "a material part of the consideration is the agreement of the grantee to support the grantor during life."

On November 13, 2023, Holly filed a four-count counterclaim alleging (1) that she was entitled to reformation of the deed; 2) that Alton and Patsy had defrauded her by representing that they would convey to her a one-third interest in their condominium; (3) that she was entitled to a judgment declaring that the deed was effective to convey to her a one-third interest in the condominium even though it was not signed by Alton and Patsy in their capacities as trustees of the Trust; and (4) that Alton and Patsy had breached the warranties in the deed.

On May 17, 2024, Alton and Patsy filed a motion for partial summary judgment. On October 31, 2024, the trial court entered an order granting that motion. Specifically, the trial court ruled (1) that the October 2020 deed was ineffective to convey title, (2) that the deed was

7

not subject to reformation, (3) that Holly's fraud counterclaim was barred by the Statute of Frauds, and (4) that Alton and Patsy were entitled to have the deed annulled pursuant to § 8-9-12. The trial court's partial summary judgment resolved all but one of the parties' claims.

On April 11, 2025, Alton Jr., as the personal representative of Alton's estate, and Patsy, individually and as the remaining trustee of the Trust, filed a motion seeking to dismiss the last remaining claim against Holly and to obtain a final order disposing of all the claims.[1] On May 6, 2025, the trial court entered an order granting the motion. On May 9, 2025, the trial court entered a final order declaring that the October 1, 2020, warranty deed was void and that Holly owned no interest in the condominium. Holly appealed.

<u>Discussion</u>

---

[1]The record indicates that Alton died on October 25, 2024, and that Alton Jr. was appointed as the personal representative of Alton's estate. A motion to substitute Alton Jr., as the personal representative of Alton's estate, for Alton was filed, and the trial court granted that motion. From that point forward in the trial court, the plaintiffs were identified as Alton Jr., as the personal representative of Alton's estate, and Patsy, individually and as trustee of the Trust. The same parties appeared as appellees in this Court.

On appeal, Holly advances three primary arguments. First, she asserts that the October 2020 deed should be reformed to reflect that Alton and Patsy executed the deed in their representative capacities as trustees, rather than in their individual capacities. Second, she contends that Alton and Patsy are not entitled to annulment under § 8-9-12 because, she says, that statute applies only when an individual -- and not a trust -- is the grantor. Finally, Holly argues that the trial court erred in dismissing her counterclaims for fraud and breach of warranty.

As a threshold matter, we need not decide whether the October 2020 deed was effective when executed or whether it is subject to reformation. Even assuming, without deciding, that the deed was valid and that reformation would otherwise be appropriate, the trial court correctly concluded that § 8-9-12 authorized Alton and Patsy to annul the deed.

I.    Section 8-9-12 Permits Annulment of the Deed

Section 8-9-12 provides:

> "Any conveyance of realty wherein a material part of the consideration is the agreement of the grantee to support the grantor during life is void at the option of the grantor, except as to bona fide purchasers for value, lienees, and mortgagees

without notice, if, during the life of the grantor, he takes proceedings to annul such conveyance."

By its terms, § 8-9-12 provides the grantor with a unilateral right to annul a conveyance when a material part of the consideration consists of the grantee's promise to support the grantor during his or her lifetime. Critically, the statute does not condition annulment on proof that the grantee failed to perform or breached that obligation. See Martin v. Martin, 998 So. 2d 1081 (Ala. 2008). Rather, the right to annulment arises solely from the nature of the consideration underlying the conveyance. See Ex parte Alexander, 806 So. 2d 1222, 1225 (Ala. 2001) ("[I]n proceedings to annul a deed under § 8-9-12, Ala. Code 1975, it is immaterial whether the promise to support was actually fulfilled by the grantee.").

Holly argues that § 8-9-12 is inapplicable because, if the deed is reformed, the Trust -- not Alton and Patsy individually -- would be the grantor. According to her, § 8-9-12 contemplates only a natural person, not a trust, as the grantor with the right to annul. We do not read the statute so narrowly.

Section 8-9-12 is remedial in nature and reflects a legislative response to a well-recognized problem: elderly or vulnerable property

10

owners conveying real property in reliance on promises of support, only to face neglect, mistreatment, or uncertainty thereafter. See Bush v. Greer, 235 Ala. 56, 58, 177 So. 341, 342 (1937) (noting that "[t]he books abound with cases where the aged, weak, or afflicted had improvidently executed conveyances upon the promise of support" and explaining that "[t]he lawmakers considered this a growing evil, and [the predecessor to § 8-9-12] was passed as declaratory of a public policy, and well within the police power of the state").

The text of the statute confirms this public policy -- that § 8-9-12 protects the individuals whose support was bargained for, not merely the nominal "grantor" identified in the deed. Section 8-9-12 applies to "[a]ny conveyance of realty" when "a material part of the consideration is the agreement of the grantee to support the grantor during life." The Legislature's use of the word "any" signals an intentionally broad scope, encompassing all qualifying conveyances. See United States v. Gonzales, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976))).

11

There is no dispute that a "material part of the consideration" for the conveyance of an interest in the condominium was Holly's "agreement" to support the "grantors" (here, Alton and Patsy).[2] Nor is there any dispute that Alton and Patsy executed the deed. They signed the deed in their individual capacities, and the deed itself identifies them as the "grantors." Thus, on its face, the transaction falls squarely within the plain language of § 8-9-12.

Holly wishes to avoid that result by arguing that the Trust -- rather than Alton and Patsy -- was the true grantor and that § 8-9-12 consequently does not apply. That argument fails for several reasons. First, as noted above, Alton and Patsy executed the deed in their

---

[2]During her deposition, Holly expressly acknowledged that the conveyance was made in consideration of her agreement to care for Alton and Patsy. She testified that, in exchange for assuming those caregiving responsibilities and leaving her career in Memphis, Alton and Patsy agreed to convey an interest in the condominium to provide her with financial security. As Holly explained:

> "All I know is that our agreement and intent was that by taking care of them and giving up my ability to retire, as had been planned, that this was a safeguard that I would have the ability to retire if I survive them. And we specifically said that I -- my fear was I don't want to be working and being a Walmart greeter. And our intention was to make sure that I had a backup retirement ability because I was giving it up."

individual capacities and were expressly designated as the "grantors" in that instrument. It is Holly who seeks to change the operative facts by reforming the deed to reflect the Trust as the grantor.

Second, the consideration for the deed was not Holly's promise to support of the Trust as an entity, but her promise to provide personal care for Alton and Patsy.

Third, even if the deed was reformed to reflect the Trust as the grantor, the substance of the transaction would remain unchanged. Alton and Patsy were the sole settlors and trustees of the Trust, retained complete control over the condominium, and stood to receive the entirety of the promised support from Holly. See Morgan Plan Co. v. Bruce, 266 Ala. 494, 497, 97 So. 2d 805, 807 (1957) (explaining that beneficial owner "'has the privilege at his election to transfer his inchoate beneficial interest in the land to the proceeds of the sale of it'"(citation omitted)); see also Lee v. Lee, 260 Ala. 93, 95, 69 So. 2d 258, 259 (1953) (holding that beneficial owner is entitled to bring "suit in the capacity of a joint owner or tenant in common" for sale of land for division of proceeds); Burditt & Radzius v. Brown (In re Barone), 184 B.R. 747, 749 (N.D. Ill. 1995) (holding that beneficial owner has the power "to receive the

13

proceeds from the sale of the property made pursuant to [his or her] power of direction").

In sum, this Court need not decide whether reformation of the deed would be proper. When the substance of the transaction demonstrates that specific individuals were the true beneficiaries of the support promise, that those specific individuals controlled the decision to convey the property, that the care of those individuals formed a material part of the consideration, and that those individuals were expressly identified in the conveyance instrument as "grantors," then those individuals may invoke the annulment remedy afforded to "grantors" under § 8-9-12. Here, Alton and Patsy were the settlors of the Trust, served as the Trust's sole trustees, purported to convey an interest in the condominium in exchange for Holly's promise to care for them personally, and were identified as "grantors" in the deed. They fall squarely within the class of persons the statute was enacted to protect. Thus, even if the deed is reformed, the Trust would function as a conduit, not as the true beneficiary of Holly's promise of care and support.

Accordingly, even if the October 2020 deed is reformed to reflect a conveyance by the Trust, § 8-9-12 remains applicable because Alton and

Patsy were the "grantors" of the relevant "conveyance of realty." For these reasons, the trial court properly "voided" -- i.e., annulled -- the October 2020 deed pursuant to § 8-9-12.

II.   The Trial Court Properly Dismissed Holly's Counterclaims

After declaring the October 2020 deed void, the trial court dismissed Holly's counterclaims for breach of warranty and fraud. On appeal, Holly contends that she should be permitted to pursue those counterclaims even if the deed was properly annulled pursuant to § 8-9-12.

With respect to her breach-of-warranty counterclaim, Holly argues that § 8-9-12 authorizes annulment of a "conveyance" under certain circumstances but does not address -- much less extinguish -- warranties or promises made contemporaneously with that conveyance. On that basis, she urges this Court to construe § 8-9-12 narrowly and to hold that the trial court erred in dismissing her breach-of-warranty counterclaim.

That argument, however, is foreclosed by long-standing precedent. This Court has repeatedly held that § 8-9-12 "is to be read into the deed" and that a grantee accepts such a conveyance "'with the limitations of the statute written into it, and with full knowledge of the rights of the

15

grantor, and the consequent defeasible character of the instrument.'" Clyburn v. Toney, 245 Ala. 341, 343, 17 So. 2d 235, 236 (1944) (citation omitted); see also Bush, 235 Ala. at 58, 177 So. at 341 ("At the time these defendants accepted the deed of complainant, [the predecessor to § 8-9-12] was in force, and the legal principle that every contract is made with reference to existing law and every law affecting the contract is read into and becomes a part of the contract when made, is directly applicable.").

Because § 8-9-12 was incorporated into the deed, any warranties arising from or dependent on the conveyance are necessarily subject to the statute's annulment mechanism. Accordingly, once the deed was declared void under § 8-9-12, there was no surviving conveyance -- and thus no surviving warranty -- upon which Holly's breach-of-warranty counterclaim could be maintained.[3]

Holly's fraud counterclaim fares no better. Because § 8-9-12 was incorporated into the deed, Holly was charged with notice that the

---

[3]We emphasize that our decision should not be read to establish a general rule that a breach-of-warranty claim can never be viable following the annulment or rescission of a deed. We hold only that when, as here, the alleged warranties arise solely from and are dependent on a conveyance that is voided pursuant to § 8-9-12, no independent warranty obligation survives the deed's annulment.

16

conveyance was subject to annulment at the option of Patsy and Alton. See Clyburn, 245 Ala. at 343, 17 So. 2d at 236. Thus, any alleged reliance on representations inconsistent with that statutory right was unreasonable as a matter of law. Further, when a deed is voided pursuant to § 8-9-12, a grantee cannot recast his or her claim for relief premised on the failed conveyance as a tort claim to recover benefits that the statute expressly permits the grantor to defeat. To hold otherwise would undermine the statute's purpose by allowing a grantee to obtain indirectly -- through damages for fraud -- the very consideration that the Legislature has declared defeasible.[4] See id. Accordingly, because the

---

[4]We note, however, that grantees are not left without any recourse. Our caselaw recognizes that, when a conveyance is annulled pursuant to § 8-9-12, the trial court retains discretion to award reimbursement to the grantee for "reasonable expenditures and services performed in caring for the grantor and for the value of such reasonable permanent improvements to the property which the grantee has made which in equity and good conscience might appear to be just." Hipp v. McMurry, 263 Ala. 11, 15, 81 So. 2d 531, 534 (1955); see also Petty v. Chamberlain, 253 Ala. 453, 455, 45 So. 2d 161, 162 (1950) (recognizing that, "on proper pleading and proof, it [is] the duty of the equity court 'to do full justice between the parties in regard to all matters growing out of the transaction brought before the court'" (citation omitted)). Importantly, our precedent makes clear that such equitable relief is available only "on proper pleading and proof." Id. Here, Holly neither sought equitable remedy of reimbursement in the trial court nor raised such a request on appeal.

trial court properly voided the deed under § 8-9-12, it did not err in dismissing Holly's fraud counterclaim.

Conclusion

We recognize the concerns Holly raises in her brief regarding the devotion she showed to her parents and the personal sacrifices she made on their behalf. Nevertheless, in enacting § 8-9-12, the Legislature made a clear public-policy choice to protect elderly and vulnerable property owners. Our role is to enforce that legislative choice. Based on the foregoing, we affirm the judgment of the trial court.

AFFIRMED.

Shaw, Wise, McCool, and Parker, JJ., concur.

Stewart, C.J., and Bryan, Sellers, and Mendheim, JJ., concur in the result.